IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| | : |
| TROY ANTHONY SHEAFFER AND | : |
| KAREN DIANE SHEAFFER | : |
| | : |
| DEBTOR | : BANKRUPTCY NO. 06-12408 |
| | : |

# OPINION

By:   STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

TPH, Inc., a secured creditor in this case, has filed a pleading styled Motion to

Enforce Prepetition Agreement.  This vaguely worded request seeks various remedies:

it asks the Court to "enforce" a prepetition agreement between it and the Debtors; to

grant TPH relief from the automatic stay; to find that the Debtors waived any right to

claim exemptions; and to authorize the Trustee to seize any nonexempt property and to

do so for TPH's sole benefit.  The Debtors have objected to the motion and filed a

cross-motion of their own.  They seek to avoid TPH's secured claim because it impairs

their claims of exemption.  A hearing on both motions was held on July 12, 2006 at

which the Court granted relief as to the Debtors' real estate and heard argument that

TPH's lien extended to all personal property claimed as exempt.  At the conclusion of

the hearing, the Court invited the parties to submit letter briefs on certain discrete issues

and then took the matter under advisement.  *See* generally Transcript (T-).     For the

reasons set forth below, TPH's Motion will be denied and Debtors' Cross-Motion will  be

granted.[1]

*Background*

TPH had sold its business to the Debtor husband prior to the bankruptcy.  T-3;

Motion, ¶ 16.  As consideration, the Debtor husband gave promissory notes secured by

a mortgage on his home and personal property.  Motion, Ex. B.  The Debtor wife

guaranteed the note.  *Id.* Ex. C.  The Debtors defaulted in payments to TPH which filed

suit against the Debtors.  TPH confessed judgment and levied against the Debtors'

cars. T-6; Cross-motion, ¶ 7.  Bankruptcy intervened to forestall further collection

efforts.

*Procedural Posture*

What joins the dispute here is the parties' competing claims to the Debtors'

personal property.  The Debtors seek to exempt that property while TPH seeks to

replevy it.  The Debtors maintain that the liens are avoidable because they impair

exemption claims and are otherwise unperfected.  TPH claims a paramount interest as

a result of either (1) having properly perfected its security interest, or (2) having

obtained a waiver from the Debtors of their right to exempt the property.[2] T-12.  The

Motion thus functions as an objection to exemptions.  As such, the burden of proof is

---

[1]As will be explained *infra*, this ruling denies an objection to exemptions.  It also determines the validity of a lien.   Therefore, it is within the Court's core jurisdiction.  *See* 28 U.S.C. § 157(b)(2)(B), (K).

[2]TPH's request that the Court authorize the Trustee to seize all such personalty for TPH's benefit can be denied summarily.  There is no authority in the Code for the Trustee to seize property for the benefit of a particular creditor.  The Trustee's duty in that regard runs to the estate and its creditors as a whole.  *See, generally*, 11 U.S.C. § 704; *In re Martin*, 91 F.3d 389, 394 (3d Cir.1996) (observing that trustee's fiduciary duty is to *all* creditors of estate).

placed upon TPH as the objecting creditor.  B.R. 4003(c); *In re Bellwoar*, 299 B.R. 369,

371 (Bankr.E.D.Pa. 2003).

*Waiver*

The Court will begin with TPH's threshold argument that the Debtors waived the

right to claim *any* of their personal property as exempt.  The parties agree that the

mortgage and security interest contains a waiver of such right.  Where they disagree is

on the effectiveness of such waiver: the Debtors maintain that Code § 522(f) expressly

renders such waiver unenforceable as to certain property while TPH points to various

decisions in which a waiver has been upheld.

The Court's own research reveals that the issue of waiver of exemptions appears

first in subsection (e) of § 522:

> **(e)** A waiver of an exemption executed in favor of a creditor
> that holds an unsecured claim against the debtor is
> unenforceable in a case under this title with respect to such
> claim against property that the debtor may exempt under
> subsection (b) of this section. *A waiver by the debtor of a
> power under subsection (f) or (h) of this section to avoid a
> transfer, under subsection (g) or (i) of this section to exempt
> property, or under subsection (i) of this section to recover
> property or to preserve a transfer, is unenforceable in a case
> under this title.*

11 U.S.C. § 522(e).  The first sentence of subsection (e) makes a waiver of an

exemption for the benefit of an *unsecured* creditor per se unenforceable.  That is not

relevant here as the parties agree that the obligation is secured.  It is the *second*

sentence which matters: a waiver of a *power to avoid* a transfer of exempt property or to

*recover property* is also unenforceable.  Here, the Debtors intend to avoid TPH's lien

—under § 522(f)—to the extent it impairs their exemptions.  Whatever waiver language

may appear in the security interest, it would not preclude the right which Debtors are

asserting here.

*Preemption and
the Waiver Issue*

At the hearing and in its letter brief, TPH argued that the Debtors freely

bargained away their right to exemptions.  Indeed, Pennsylvania law has historically

upheld waivers of exemption rights.  *See Beatty v. Knoxville Land Imp. Co.*, 139 Pa.

358, 362, 21 A. 74 (Pa. 1891) (upholding contractual provision waiving personal

property exemptions).  However, the Court finds that the waiver issue implicates federal

supremacy.  As Article VI of the Constitution provides:

> [T]he Laws of the United States … shall be the supreme Law
> of the Land; and the Judges in every State shall be bound
> thereby, any Thing in the Constitution or Laws of any
> State to the Contrary notwithstanding.

U.S.Const. Art. VI, cl. 2.  Constitutional authority is vested in Congress "[t]o establish ...

Uniform Laws on the subject of Bankruptcies throughout the United States." *Id.*, Art. I, §

8, cl. 4. "Where Congress has chosen to exercise its authority, contrary provisions of

state law must accordingly give way." *In re Roach,* 824 F.2d 1370, 1373 (3d Cir.1987)

*citing Johnson v. First National Bank of Montevideo*, 719 F.2d 270, 273 (8th Cir.1983),

*cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Nonetheless, "the

usual rule is that congressional intent to pre-empt will not be inferred lightly.

Pre-emption must either be explicit, or compelled due to an unavoidable conflict

between the state law and the federal law." *Penn Terra Ltd. v. Department of*

*Environmental Resources*, 733 F.2d 267, 272 (3d Cir.1984); *accord In re Quanta*

*Resources Corp.*, 739 F.2d 912, 915 (3d Cir.1984). *See also Stellwagen v. Clum*, 245

U.S. 605, 613, 38 S.Ct. 215, 217, 62 L.Ed. 507 (1918) ("state laws are ... suspended

only to the extent of actual conflict with the system provided by the Bankruptcy [Code] of

Congress").

Any analysis must begin with "the basic assumption that Congress did not intend

to displace state law." *Penn Terra*, 733 F.2d at 272-73 (*citing Maryland v. Louisiana*,

451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)).  "Proper respect, therefore, for

the independent sovereignty of the several States requires that federal supremacy be

invoked only where it is clear that Congress so intended. Statutes should therefore be

construed to avoid pre-emption, absent an unmistakable indication to the contrary." *Id.*

at 273. Although "any state legislation which frustrates the full effectiveness of federal

law is rendered invalid by the Supremacy Clause," *Perez v. Campbell*, 402 U.S. 637,

652, 91 S.Ct. 1704, 1712, 29 LED.2d 233 (1971), absent a conflict "between the state

and bankruptcy laws, the law of the state where the property is situated governs

questions of property rights."  *Johnson*, 719 F.2d at 273.

The operative term here is *conflict*.  The Supreme Court has stated that such a

conflict exists:

> when 'compliance with both federal and state regulations is a
> physical impossibility,' *Florida Lime & Avocado Growers, Inc.
> v. Paul*, 373 U.S. 132, 142-143, 83 S.Ct. 1210, 1217, 10
> L.Ed.2d 248 (1963), or when state law 'stands as an
> obstacle to the accomplishment and execution of the full
> purposes and objectives of Congress.'  *Hines v. Davidowitz*,
> 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

*Brown v. Hotel and Restaurant Employees and Bartenders Int'l Union Local 54*, 468

U.S. 491, 501, 104 S.Ct. 3179, 3185, 82 L.Ed.2d 373 (1984).  In this case, the two laws

cannot be reconciled:  Pennsylvania law may uphold waivers of exemption but the

Bankruptcy Code expressly nullifies them in the context of exemptions.  The federal law

being paramount, it must preempt that of the state.  *See In re Strother*, 328 B.R. 818,

823 (Bankr.E.D.Okla. 2005) (holding that §522(f) preempts state exemption statute).

And it makes no difference—as TPH suggests in its letter brief— whether the state law

in question is statutory or common law.  The doctrine applies equally to both.  *See Geier*

*v. American Honda Motor Co.*, 529 U.S. 861, 869, 120 S.Ct. 1913, 1919, 146 L.Ed.2d

914 (2000)(recognizing that preemption applies equally to state common law rules);

*Matter of Reading Co.*, 115 F.3d 1111, 1117 (3d Cir. 1997) (holding that federal

environmental statute preempted state common law cause of action.[3]

*TPH's Security Interest Versus*
*The Debtors' Claim of Exemption*

Alternatively, TPH contends that its security interest in the personalty trumps the

Debtors' exemption claims.  The Bankruptcy Code provides that a lien on property

claimed as exempt will survive bankruptcy unless avoided:

> **(c)** Unless the case is dismissed, property exempted under
> this section is not liable during or after the case for any debt
> of the debtor that arose, or that is determined under section
> 502 of this title as if such debt had arisen, before the
> commencement of the case, except--
> …
>
> **(2)** a *debt secured by a lien* that is--
>
> **(A)(i)** *not avoided under subsection (f) or (g) of this section*
> *or under section 544*, 545, 547, 548, 549, or 724(a) of this
> title;

---

[3]And with regard to TPH's argument that numerous decisions upheld a waiver provision, the
Court reiterates its observation made at the hearing that such cases involved § 362 and not the
exemptions statute which is the issue here.  T-20.

11 U.S.C. § 522(c)(2)(A)(i) (emphasis added).  The Debtors rely on subsection (f) to

argue that TPH's lien impairs certain exemptions.  *See* Cross Motion.  They also argue

that TPH has failed to perfect its security interest in property not covered by subsection

(f).  T-13; *See* Debtors' Letter Brief.

*Avoidance of the Liens*
*Under Subsection (f)(1)*

The Debtors' Cross-motion is brought under § 522 (f)(1) which allows the

avoidance of certain liens on certain property:

> **(f)(1)** Notwithstanding any waiver of exemptions but subject
> to paragraph (3), the debtor may avoid the fixing of a lien on
> an interest of the debtor in property to the extent that such
> lien impairs an exemption to which the debtor would have
> been entitled under subsection (b) of this section, if such lien
> is--
>
> **(A)** a judicial lien,…; or
>
> **(B)** a nonpossessory, nonpurchase-money security
> interest…

11 U.S.C. § 522(f)(1).  It alleges that TPH has both judicial and nonpossessory,

nonpurchase money liens which impair the Debtors' exemption in certain property.

Cross-Motion, ¶ 7, 8.

*The Judicial Lien*

The parties are in agreement that TPH levied upon the Debtors' two

automobiles.  That levy constitutes a judicial lien.  *See* 11 U.S.C. § 101(36) (defining

"judicial lien" as "lien obtained by … levy").  The Debtors argue that TPH never

perfected its lien in the vehicles because that encumbrance is not reflected on the titles

to the cars.  T-15,16.   They are correct.

To perfect a bona fide security interest in a vehicle, the Pennsylvania Uniform

Commercial Code provides that the Motor Vehicle Code governs.  *See First National*

*Bank of Pennsylvania v. Cech*, 148 B.R. 244, 247 n.3 (Bankr.W.D.Pa.1992).

Specifically, the Pennsylvania UCC provides:

> (a) **Perfection.**-A security interest in a vehicle titled in this
> Commonwealth is perfected at the time the department
> [PennDot] receives all of the following:
> (1) A completed application specifying the lienholder's name
> and address.
> (2) An amount equal to or greater than the fee required by
> section 1953 (relating to security interest).
> (3) The manufacturer's statement of origin or the existing
> certificate of title for the vehicle.
> * * *
> (d) **Delivery of certificate of title.**-Upon perfection of a
> security interest in a vehicle, the department shall issue a
> certificate of title with the names of the first two lienholders
> and indicate the number of additional lienholders existing at
> that time. The department shall mail the certificate of title to
> the first lienholder named in the certificate of title.

75 P.S. § 1132.1; *Com. v. One (1) 2001 BMW Vin No. WBAFA53571LM72902*,

868 A.2d 42, 43-44 (Pa.Cmwlth.2005).  Beyond TPH's levy on the cars, there is no

indication that TPH submitted an application to the Department of Transportation which

would constitute perfection.  As such, TPH is the holder of a judicial lien which may be

avoided to the extent allowed by subsection (f)(1).   The Debtors have claimed a total

exemption in their cars of approximately $16,000.  *See* Schedule C.  TPH is owed

upwards of $350,000.  *See* Schedule D.  The judicial lien, then, impairs their exemption rights and may be avoided.[4]

*The Non-Possessory,*
*Non-Purchase Money Lien*

The Cross Motion seeks to avoid TPH's non-purchase money,[5] non-possessory lien as it impairs their remaining exemption claims.  TPH argues that not all of the property claimed as exempt comes within the protection of subsection (f).  T-10.  What type of property does subsection (f)(1)(B) provision protect?

Section 522 (f)(1)(B) allows a debtor to avoid a lien which impairs an exemption in:

> **(i)** household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
>
> **(ii)** implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
>
> **(iii)** professionally prescribed health aids for the debtor or a dependent of the debtor

---

[4]The parties do not dispute the amounts owed THP; therefore, the Court need not undergo the mathematical calculation to determine the precise extent of impairment found in § 522(f)(2)(A).

[5]TPH does not dispute the Debtors' characterization of its lien as *non*-purchase money. *See* 13 P.S. § 9103 (defining "purchase money collateral" and "purchase money obligation")

11 U.S.C. § 522(f)(1)(B).  None of the property claimed exempt would come within the types described in subparagraphs (B)(ii) or (iii).  That leaves the property described in (B)(i) and there the term "household goods" is specifically defined further on:

**(4)(A)** Subject to subparagraph (B), for purposes of paragraph (1)(B), the term "household goods" means--

**(i)** clothing;

**(ii)** furniture;

**(iii)** appliances;

**(iv)** 1 radio;

**(v)** 1 television;

**(vi)** 1 VCR;

**(vii)** linens;

**(viii)** china;

**(ix)** crockery;

**(x)** kitchenware;

**(xi)** educational materials and educational equipment primarily for the use of minor dependent children of the debtor;

**(xii)** medical equipment and supplies;

**(xiii)** furniture exclusively for the use of minor children, or elderly or disabled dependents of the debtor;

**(xiv)** personal effects (including the toys and hobby equipment of minor dependent children and wedding rings) of the debtor and the dependents of the debtor; and

**(xv)** 1 personal computer and related equipment.
**(B)** The term "household goods" does not include--

**(i)** works of art (unless by or of the debtor, or any relative of the debtor);

**(ii)** electronic entertainment equipment with a fair market value of more than $500 in the aggregate (except 1 television, 1 radio, and 1 VCR);

**(iii)** items acquired as antiques with a fair market value of more than $500 in the aggregate;

**(iv)** jewelry with a fair market value of more than $500 in the aggregate (except wedding rings); and

**(v)** a computer (except as otherwise provided for in this section), motor vehicle (including a tractor or lawn tractor), boat, or a motorized recreational device, conveyance, vehicle, watercraft, or aircraft.

11 U.S.C. § 522(f)(4)(A),(B). A review of Schedule C shows that all of the clothing, furniture, furnishings, appliances, minor books and pictures, and multi-function printer constitute protected items. Electronic equipment may also be included but only to the extent of $500. Jewelry (other than wedding rings) worth no more than $500 may be included. So it is only the lien on these items which may be avoided under this subsection. For any remaining property on Schedule C, the Debtors must find another way to avoid the liens which encumber them.

*Avoidability of Liens on*
*Other Property Exempted*

TPH maintains that its lien encumbers any such remaining property.  That

property consists of a shotgun, a video camera, cash and accounts, an IRA, a tax

refund, and a personal injury settlement payment.  T-10-12.  The Debtors argue that

TPH's security interest in these other items is likewise avoidable.  Implicitly, then, the

Debtors refer to those other powers which § 522(c) makes available to a debtor seeking

to exempt property subject to a lien.[6]  Among those provisions is §544(a) which

provides:

> (a) The trustee shall have, as of the commencement of the
> case, and without regard to any knowledge of the trustee or
> of any creditor, the rights and powers of, or may avoid any
> transfer of property of the debtor or any obligation incurred
> by the debtor that is voidable by–

> (1) a creditor that extends credit to the debtor at the time of
> the commencement of the case, and that obtains, at such
> time and with respect to such credit, a judicial lien on all
> property on which a creditor on a simple contract could have
> obtained such a judicial lien, whether or not such a creditor
> exists;

---

[6]The argument is implicit because the Debtor never cites this provision.  It is, however, the statutory predicate for a debtor to avoid an unperfected lien.  Because there is no apparent prejudice to TPH in considering this argument, the Court will conform the pleadings to the proof and deem it to have been made in the first instance.  Although B.R. 7015 makes Rule 15 – the amendment rule – applicable to adversary proceedings, the trend of the cases appears to apply Rule 7015 to contested matters as well.  *See In re MK Lombard I, Ltd*, 301 B.R. 812, 816 (Bankr.E. D.Pa. 2003) (citing cases and applying Rule 15 through invocation of B.R. 9014(c)); 10 *Collier on Bankruptcy* ¶ 7015.02 n.1 (Matthew Bender 15th ed. Revised).

11 U.S.C. § 544(a)(1).  Known as the "strong arm clause," this provision is intended to

cut off *unperfected security interests*, secret liens and undisclosed prepetition claims

against the debtor's property as of the commencement of the case.  5 *Collier on*

*Bankruptcy* ¶ 544.03 (Matthew Bender 15th ed. Revised ) (emphasis added).  To the

extent a trustee declines to avoid and recover property under this subsection, § 522

allows a debtor to do so:

> The debtor may avoid a transfer of property of the debtor or
> recover a setoff to the extent that the debtor could have
> exempted such property under subsection (g)(1) of this
> section if the trustee had avoided such transfer, if--
>
> **(1)** *such transfer is avoidable by the trustee under section*
> *544,* 545, 547, 548, 549, or 724(a) of this title or recoverable
> by the trustee under section 553 of this title; and
>
> **(2)** the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(h) (emphasis added).  The Debtors argue that TPH's security interest

in the remaining property may be avoided because it was not perfected.  TPH either

failed to perfect because they did not obtain possession or control of the collateral or

because they failed to file a UCC-1 Financing Statement where appropriate.  *See*

Debtors' Letter Brief.  To determine if the Debtors are correct, the Court will examine

that assertion as to each item of property.

*Cash and Accounts*

        The Debtors argue that to perfect a security interest in cash and accounts TPH

was required to have taken possession of the cash and to have garnished the accounts.

The Court agrees.  The applicable UCC section provides:

**(b) Control or possession of certain collateral.--**Except as otherwise provided in  section 9315(c) (relating to perfection of security interest in proceeds) and (d) (relating to continuation of perfection) for proceeds:

(1) a security interest in a deposit account may be perfected only by *control under section 9314* (relating to perfection by control);

…

(3) a security interest in money may be perfected only by the secured party's taking possession under section 9313 (relating to when possession by or delivery to secured party perfects security interest without filing).

13 P.S. § 9312(b) (emphasis added).  Section 9313 specifically provides that a secured

party may perfect its interest in money by possession:

(a) Perfection by possession or delivery.--Except as otherwise provided in subsection (b), a secured party may perfect a security interest in negotiable documents, goods, instruments, money or tangible chattel paper by *taking possession* of the collateral.

13 P.S. § 9313(a) (emphasis added).  Likewise, a security interest in deposit accounts

is perfected by control

**(a) Perfection by control.--**A security interest in investment property, deposit accounts, letter-of-credit rights or electronic chattel paper may be *perfected by control* of the collateral under section 9104 (relating to control of deposit account), 9105 (relating to control of electronic chattel paper), 9106 (relating to control of investment property) or 9107 (relating to control of letter-of-credit right).

13 P.S. § 9314(a)(emphasis added).  In turn, a secured creditor has control of a deposit

account where

(1) the secured party is the bank with which the deposit account is maintained;

(2) the debtor, secured party and bank have agreed in an
authenticated record that the bank will comply with
instructions originated by the secured party directing
disposition of the funds in the deposit account without further
consent by the debtor; or

(3) the secured party becomes the bank's customer with
respect to the deposit account.

13 P.S. § 9104(a).  Because TPH has neither possession of the Debtors' cash nor

control of the bank accounts, its security interest in that property is unperfected.

*Shotgun and Video Camera*

The Debtors claim as exempt a shotgun and video camera; TPH maintains that

its lien attaches to that property.  Such items  constitute consumer goods under

Pennsylvania UCC.  *See* 13 P.S. 9102 (defining consumer goods as "goods[7] which are

used or bought or used primarily for personal, family or household purposes).  A creditor

seeking to perfect a security interest which is not a purchase money security interest in

consumer goods must file a UCC-1 financing statement.  *See* 13 P.S. § 9310(a).  Has

TPH filed its financing statements as required?

At oral argument, TPH insisted that it had.  T-4, 22.  However, if TPH did file

financing statements, it did not make them part of the record: they were neither offered

as evidence nor attached to any pleading or brief.  TPH is helped, but only somewhat,

by what appears in the Debtors' Letter Brief.  There, they acknowledge that TPH filed its

UCC-1's as to the husband only; no UCC-1's were filed as to the Debtor wife.  *See*

Debtors' Letter Brief.  Even so, without a copy of the UCC-1s before it, the Court cannot

---

[7]"Goods," in turn, are defined as all things which are movable when a security interest
attaches. *Id.*

-15-

tell if they cover the type of property at issue here. *See Matter of H.L. Bennett Co.*, 588

F.2d 389, 392 (3d Cir. 1978) (stating that financing statement must describe collateral

with some degree of precision by identifying "type" or "item"). Merely because the

security agreement may state that TPH's collateral consists of that property does not

necessarily mean that the financing statement does. Such a description is required

under applicable law. The Pennsylvania UCC states that a financing statement is

sufficient only if it:

> (1) provides the name of the debtor;
>
> (2) provides the name of the secured party or a representative of the secured party; and
>
> (3) *indicates the collateral covered by the financing statement*.

13 P.S. § 9502(a)(emphasis added). A financing statement sufficiently indicates the

collateral which it covers if the financing statement provides:

> (1) a *description of the collateral* pursuant to section 9108 (relating to sufficiency of description); or
>
> (2) an indication that the financing statement covers all assets or all personal property

13 P.S. § 9504(a)(emphasis added). Collateral may be described as follows:

> **(a) Sufficiency of description.--**Except as otherwise provided in subsections (c), (d) and (e), a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described.
>
> **(b) Examples of reasonable identification.--**Except as otherwise provided in subsection (d), a description of

collateral reasonably identifies the collateral if it identifies the
collateral by:

(1) specific listing;

(2) category;

(3) except as otherwise provided in subsection (e), a type of
collateral defined in this title;

(4) quantity;

(5) computational or allocational formula or procedure; or

(6) except as otherwise provided in subsection (c), any other
method, if the identity of the collateral is objectively determinable.

**(c) Supergeneric description not sufficient.--**A description
of collateral as "all the debtor's assets" or "all the debtor's
personal property" or using words of similar import does not
reasonably identify the collateral.

(d) Investment property.--Except as otherwise provided in
subsection (e), a description of a security entitlement,
securities account or commodity account is sufficient if it describes:

(1) the collateral by those terms or as investment property;
or

(2) the underlying financial asset or commodity contract.

13 P.S. § 9108.  Without the UCC-1's in the record, the Court cannot ascertain if TPH

sufficiently described the collateral and, thereby, perfected its security interest.  This

matters because the purpose of the Pennsylvania statute requiring filing of a financing

statement is to give potential future creditors sufficient notice of the existence of a

security interest in a particular type of property so that further inquiry can be made

about the property subject to the security interest.  *In re Brace*, 163 B.R. 274, 278

(Bankr.W.D.Pa.1994).  As a consequence, TPH has failed to meet its burden of proof;

therefore, the objection to the exemption of the shotgun and video camera is denied.

*Wife's Pension and*
*Retirement Plan;*
*Husband's IRA*

The Debtors also challenge TPH's assertion of a superior interest in the wife's

pension and retirement plan as well as the husband's IRA.  The pension is claimed as

exempt under § 522(d)(10)(E) and the retirement plan and IRA under (d)(12).  *See*

Schedule C.  At the hearing, the Debtors made alternative arguments: first, that such

interests are excluded from property of the estate pursuant to § 541(c); and second, that

if those assets are property of the estate, then TPH failed to perfect its security interest

in them.  T-15, 23, 24.  This was one of the issues upon which the Court allowed the

parties to submit briefs.  In their Letter Brief, the Debtors speak only to the IRA and

assert that it is "investment property."  As such, their arguments continues, a security

interest in such property is perfected only by *possession*.  *See* Debtors' Letter Brief.

TPH disagrees asserting that its interest was properly perfected upon *filing*.  In its Letter

Brief, it challenges the claim that such property may be excluded from the estate and

doubts whether the IRA may qualify for the exemption under (d)(12).

*Exclusion from*
*the Estate*

The Court will take up first the Debtors' argument that the three assets may be

excluded from the estate because they may not be alienated.  The Supreme Court's

decision in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242 (1992), excluded an

ERISA-qualified plan from a bankruptcy estate.  The record in that case had proof of

anti-alienation provisions to support the High Court's holding.  *Id.* at 759, 112 S.Ct at

2248. In this case, there is nothing like that in the record.  The Court is wholly

unapprised of the terms and condition of each of these retirement vehicles.  It cannot

tell, then, whether there is some such "trust" arrangement or other restriction on transfer

indicating that the asset is not part of the estate.  Accordingly, the Court cannot find that

these assets are excluded from the Debtors' estate.

*Perfecting a Security*
*Interest in the IRA, Pension,*
*and Retirement Plan*

Assuming these assets to be properly part of the estate, the Court turns to TPH's

claim that its interest in them is paramount.  Neither party, however, has assisted the

Court by explaining what kind of collateral is at issue here.  This matters because that is

the starting point for any determination of perfection.  *See* 4 White & Summers, *Uniform*

*Commercial Code* § 30-1 (5th ed.) (noting the importance of the definition section 9-102

to determination of perfection)  It is only the Debtors who specifically say that the IRA is

investment property but they are silent as to the pension and retirement plan.  For its

part, TPH addresses the issue, but only obliquely.  Its Letter Brief relies on section 9312

of the Pennsylvania UCC which allows permissive filing to perfect an interest in "chattel

paper, negotiable documents, instruments, or investment property." But TPH never says

which of these four types of property these assets consist of.  That leaves the Court to

begin the analysis from square one.

The Court's own investigation into the matter reveals the Debtors to be correct in

characterizing the IRA as "investment property."  It makes the same finding as to the

pension and retirement savings.[8]  To perfect a security interest in investment property,

the permissive filing rule applies: a creditor *may* file a UCC-1 where appropriate.  13

P.S. § 9312(a).  Otherwise, control of the investment property is effective.  *See* 13 P.S.

§ 9314(a) and 9106.  Because TPH has shown that it has done either, its security

interest is unperfected and avoidable.

*Tax Refund*

The Debtors also seek to exempt a tax refund for 2005; THP asserts that such

asset is covered by its security interest.  *See* Schedule C; TPH Letter Brief.  Under the

UCC, a tax refund is considered a "general intangible."  The UCC defines a "general

intangible" as

> Any personal property, including things in action, other than
> accounts, chattel paper, commercial tort claims, deposit
> accounts, documents, goods, instruments, investment
> property, letter-of-credit rights, letters of credit, money and
> oil, gas or other minerals before extraction. The term
> includes payment intangibles and software.

---

[8]Section 9102 defines "investment property" as "(i) a security, whether certificated or uncertificated; (ii) a security entitlement; (iii) a securities account; (iv) a commodity contract; or (v) a commodity account."13 P.S. § 9102.  A "securities account" is "an account to which a *financial asset* is or may be created in accordance with an agreement under which the person maintaining the account undertakes to treat the person for whom the account is maintained as entitled to exercise the rights that comprise the financial asset." 13 P.S. § 8501(a).  A "financial asset" is defined as "(1) a security; (2) an obligation of a person or a share, participation or other interest in a person or in property or an enterprise of a person, which is, or is of a type, dealt in or traded on financial markets, or which is recognized in any area in which it is issued or dealt in as a medium for investment; or (3) any property that is held by a securities intermediary for another person in a securities account if the securities intermediary has expressly agreed with the other person that the property is to be treated as a financial asset under this division." It is fair to presume that the  the IRA, pension, and retirement plans are all invested in various securities.  *See* 13 P.S. § 8102 (defining the term "security" *inter alia* as a "medium for investment")

13 P.S. § 9102.  *See In re American Home Furnishings Corp.*, 48 B.R. 905, 908

(Bankr.W.D.Wash.1985)(finding that tax refund is a general intangible); *In re  Certified*

*Packaging, Inc.*, 1970 WL 12619 (D.Utah)(same); *In re Jefferson Mortgage Co.*, 25 B.R.

963, 968 (Bankr.D.N.J.1982)(same); *In re Kendrick & King Lumber, Inc.*, 14 B.R. 764,

766  (Bankr.W.D.Okla.1981)(same).  As such, a security interest in such collateral may

be perfected only by filing a UCC-1 bearing the required description of the collateral.

Just as with the investment property, there is no proof in this record that a sufficient

filing was made.  The Court therefore finds that TPH's security interest in the tax refund

is unperfected and, therefore, avoidable by the Debtors.  Such property may be properly

claimed as exempt.

*Personal Injury*
*Payment*

The Debtors have also claimed as exempt a final payment which the Debtor wife

is to receive from the settlement of an automobile claim.  *See* Schedule C.  TPH asserts

a conditional challenge to that property arguing that it is may not be exempted to the

extent the payment is compensation for pain and suffering.  *See* TPH Letter Brief.

Non-commercial tort claims are specifically excluded from the Pennsylvania

UCC.  *See* 13 P.S. § 9109(d)(12) (prohibiting the assignment of a claim arising in tort,

other than a commercial tort claim); *see also In re Bell Fuel Oil Corp.*, 99 B.R. 602, 608

(Bankr.E.D.Pa.1989) (recognizing tort claim exclusion from the definition of "general

intangibles").  Given that exclusion, TPH's security interest cannot include that payment.

Therefore, the Debtors may exempt it.

*Summary*

Because TPH has failed to demonstrate a perfected security interest in any of the Debtors' personal property,[9] its claim to such property must be denied.  As a result, the Debtors may exempt all of the property on Schedule C.

An appropriate order follows.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:   August 16, 2006

---

[9]To the extent TPH may be asserting a secured interest in the Debtor wife's life insurance policy, such interest is unenforceable.  A debtor may not pledge an interest in life insurance to secure an obligation.  *See* 13 P.S. § 9109(d)(8)(prohibiting a security interest in life insurance); *see also In re Remcor*, 186 B.R. 629, 633 (Bankr.W.D.Pa.1995); *In re Tyson Metal Products, Inc.*, 117 B.R.181, 185 (Bankr.W.D.Pa.1990); *Ettinger v. Central Penn Nat. Bank*, 2 B.R. 385, 393 (E.D.Pa.1979) *rev'd on other grds* 634F.2d 120 (1980).  As to the sole proprietorship, the Debtor husband's business, a security interest in such an asset may be perfected only by filing.  The court has already found that the record does not sufficiently prove that a sufficient filing occurred. Therefore, any claim to this asset is denied and it may be exempted to the extent it has any value, which is doubtful as the business is not operating.  T-17.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| | : |
| TROY ANTHONY SHEAFFER AND | : |
| KAREN DIANE SHEAFFER | : |
| | : |
| DEBTOR | : BANKRUPTCY NO. 06-12408 |
| | : |

# ORDER

AND NOW upon consideration of the Motion of TPH, Inc. To Enforce Prepetition

Agreements, the Debtors' Objection thereto, and the Debtors' Cross Motion to Avoid

Liens under Section 522(f), after hearing held July 12, 2006, and for the reasons set

forth in the foregoing Opinion,  it is

ORDERED that TPH's Motion is denied and that the Debtors' Cross Motion is

Granted.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:   August 16, 2006

**MAILING LIST:**

George Conway, Esquire
Office Of The U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia PA  19106

Thomas P. Heeney, Jr., Esquire
HEENEY & ASSOCIATES, P.C.
6141 Keller's Church Road
Pipersville, PA 18947

David Brion Smith, Esquire
SMITH GIACOMETTI LLC
100 South Broad Street, Suite 1200
Philadelphia, PA 19110

Arthur P. Liebersohn, Esquire
Chapter 7 Trustee
924 Cherry Street
Fourth Floor
Philadelphia, PA 19107